United States Department of Labor. Okay, Mr. Metzger. Good morning. Good morning. May it please the court. My name is Tom Metzger. I'm with Little Mendelsohn. I'm here on behalf of the petitioner, Chewy, Inc. Understanding the court has read our briefs, let me just cut to the bottom line. Yeah, not only have I read your briefs, but I've also read the amicus brief of the Retail Litigation Center, which I'll just go ahead and tell you, I think presents your best case. And your honor, specifically referring to the preemption? Yeah, the preemption argument. I mean, that's the only argument that that amicus brief makes. And, you know, I can only speak for myself this morning, but I thought that provided the most persuasive and focused argument for your side. Thank you, your honor. Let me then go directly to preemption and the issues there. In terms of the standard for preemption, the Department of Labor and the Administrative Law Judge have attempted to make the standard something entirely different than what it actually is under 1910.5 F. Under the standard for preemption for OSHA, it's a question of whether the actual regulation, in this case, the Powered Industrial Truck Standard under 1910.178, whether that covers the condition or practice or operation of the events of the hazard itself. As read by the secretary, does covered mean specifically addressed? It does not need to be that specific. And let me... Well, listen to my question. As read by the secretary, does it mean specifically addressed? Covered? If I understand your question, your honor, the secretary is asserting that. Has the secretary read it that way in its litigation position? And has the commission, which is the administrative body here, interpreted it that way? Yes, I believe they have. So are we stuck with that? No. Why not? Not at all. Let me give a perfect example, your honor, and it's parallel to the C&W Facility Services case that we cited and that this court decided just a couple of years ago. In that case, we were dealing with the Personal Protective Equipment Standard. I'll stop you a little bit. I want to hear what you have to say. Obviously, I've read your briefing on that, but that is not a general duty case. In other words, it's not the interaction between the general duty and the specific duty and the regulation here, which tells us what to do, where one is covered or not. So my question to you is this, and answer it however you wish, is are we not bound by the secretary's reading absent some argument that that reading is unreasonable or doesn't comply with the regulation in an hour context, doesn't comply with the statute in a Chevron context, something like that? We're not bound by it, your honor, because their interpretation, their application of it is in fact far too narrow. What I was referring to under the C&W Facility Services case was that there the Department of Labor brought a citation under the PPE standard when it does not mention drowning, does not mention a life jacket, but they pursued that case and brought it to this court saying that they had in fact identified a violation of the PPE standard when it does not address that standard, does not address the hazard, did not address a dock, did not address a personal flotation device. Here we have in fact just the opposite. We have a standard under the standard which addresses the equipment itself, unlike C&W Facility Services. We have the hazard itself of running into the equipment or running into these racks, and we also have the very question of injuries based upon use of the powered industrial truck in these warehouses. I'm not sure how that answers my question about specifically addresses. What I think I hear you saying is it is specifically addressed here for those reasons, but not that the standard itself is wrong, which is what I'm asking about. So let's assume that is the governing standard here. Tell me where in 1910-178, I think I have it right, it specifically addresses the underwrite hazard here. Yes, your honor. So first, it specifically addresses it by regulating the powered industrial truck itself, the very equipment that we're addressing. It also addresses the use of that equipment. It addresses the use of that equipment inside of this exact type of environment and it also addresses the powered industrial truck hitting the racks or hitting... Does that mean that any accident with the power truck inside of a warehouse is covered by 1910-178? And if not, give me an example of what would not be covered. I believe, your honor, in terms of that broad standard, the 1910.178, that it would cover, and I can't think of an example that it would not cover in terms of an accident, that someone operating that equipment in the manner in which it was being operated here. In fact, the training, which is a part of that standard and also part of the voluntary provisions that OSHA had identified in terms of compliance with or aspirational compliance with the standard also goes specifically to the underwrite hazard itself. And also, as raised in the that, in fact, the training required training for the underwrite hazard. If, in fact, the standard itself did not cover the underwrite hazard, how could the Department of Labor actually then assert in that case that the employer was in violation of the standard for not training on the underworld? It's also with respect to... It's a good question, by the way. It's one I'm going to ask your opposing counsel when she comes up here. It's also consistent with that, your honor, under the SHIB or the Safety and Health Information Bulletin that also addresses training as one of the options to address an underwrite hazard in this case under that particular standard. In addition, the administrative law judge at page 29 of her decision stated, quote, that 1910.178 is, quote, geared towards preventing the underwrite, the training itself. Yeah. And then goes on to say, but it doesn't address what happens in the event of an underwrite. Right. Which I think is a distinction without a difference, your honor, in that the... It seems to require that unless the regulation that's specifically addressed for this hazard entirely eliminates the possibility of the hazard, in other words, that the regulation somehow fails to achieve its end, that you can rely upon the general duty clause without having to go through notice and comment and change the regulation in a more specific way. Precisely the danger of this position that the Department of Labor has taken. I have a record question about how this accident happened and what is an underwrite and what is not an underwrite. As I understand it, the truck itself did not hit the column or any part of the building. It just, he backed up too far and so he, his body is what got crushed by the rack. Is that an accurate description of what happened here? There was no striking of the column or the building. Rather, he went under the rack and got only his body touched the rack. Is that correct? In terms of, I think that's mostly correct, your honor, in that the equipment, you're absolutely right. Never touched the rack. I don't know whether it ever touched the rack. He obviously, his body was trapped between... I know, but I'm trying to see what's covered by the standard and the forklifts and it specifically says striking the column or any other part of the building. I'm just trying to understand in this accident, I mean, there could be underwrite accidents where you strike a column and hit the rack, but there's the truck. But it seemed to me this accident was one where the vehicle itself did not strike anything. He just backed up too far and therefore caused his body to be crushed. That looked like that's how the evidence showed it. Is that correct? Your honor, that I don't know. To be fair, in terms of the specifics as to whether any part of that powered industrial truck actually hit... What do you mean you don't know? What does the record show? It has to show something. So there's no evidence in the record that it struck. As I understand it, there's no evidence that his vehicle struck a column or any part of the rack. Is that correct? I don't know that that's correct. As a matter of fact, your honor, we do have a, we have a photograph that is a part of the record. It was not a video showing exactly what occurred. That was afterwards. Right. And it doesn't have him on it. And there's, the photograph doesn't show any touching of a column or the rack or anything. And in terms, your honor, of that Maybe it doesn't matter to your argument. I know you're going to say that, but it might matter to me as to whether this accident is covered by the standard. Since the standard is very, first of all, it never uses a sun drive, but it does refer to striking a column or any part of the building. And your honor, I believe that is a distinction here under 1910.178. That should not, as a matter of law, make a difference because of how broadly that powered industrial truck standard is written to address events of someone operating the equipment. So that goes back to the other question you heard is that basically it covers any accident. The standard is broad enough to cover any accident with forklift or give us one where it would not cover. And what I'm referring to, I'm concerned whether this is one that it does not cover. And your honor, in terms of this specific grouping of accidents we're talking about here, which may be first with a powered industrial truck covered by the standard, in a warehouse or fulfillment center covered by the standard, the operator and running into something. That begs the question covered by the standard. We're at, obviously it covers accidents with these types of vehicles in the warehouse and so forth. So my question is, does it cover every type of accident? That's your position. It has to be here. Yes, I believe it does. No matter what it is, if it's in this warehouse, it's an accident and he's on the forklift, it's covered. And the standards general, I mean specific enough to cover all of that. I believe it is. Okay. Yes. And an accident here is an underwrite. Is there any dispute about that? No. But it's an underwrite. It's referred to as an underwrite. That's right. And as I understand your argument, the regulation is directed to the prevention of underwrites. It is. Yes, exactly. And how is that? So it doesn't use the word underwrite. It says the striking of a column or building. Right. Correct? The word underwrite is not in the regulation, correct? Not specifically in the regulation. Just as in C&W Facility Services, drowning was not. I promise you I know about that. Okay. Since I was on the channel. Yes. Okay. So we understand about that case. Yes. So what part of the regulation covers underwrite here or maybe just the whole thing does? What specifically covers the underwrite is the regulation of the powered industrial truck itself, the use of it, the operation of it, the training for the use of it, and running into things such as a rack or there being an accident during the operation of the powered industrial truck. And if in this case, the Department of Labor is then able to say that we can be so specific because we can carve out any accident, although covered with all those instances, they can then go to the general duty clause that allows them to start to write in their own ad hoc manner additional requirements and regulations. How do we read the preamble, which clearly doesn't refer to an underwrite? It talks about an employee getting struck by the vehicle or running into a column or so forth. Does the preamble narrow the regulation at all or it has no effect? I believe the preamble helps our assertion, Your Honor, that in fact, this is covered by the incident here. The factual issue here is covered by what the broad scope of 1910.178 is, which is the use of the powered industrial truck and accident involving it, particularly within a Okay. You've gone over, but you've been answering questions from the court, so you've saved a few minutes for rebuttal. We'll hear from Ms. Tryon. Thank you. Good morning. May it please the court. My name is Amy Tryon here for the Secretary of Labor. I too will start with a preemption question. First of all, to address the issue of this sort of standard for when something is preempted, I think that whether we use the term cover, whether the standard covers the hazard at issue, whether it addresses it, that doesn't matter for purposes of this case because the powered industrial truck standard does not bear upon, does not have to do with, does not cover or address the underwrite hazard. So I'll tell you what I'm having trouble with. And it's really three things that I'm having trouble with from that. And if you would address them. Sure. So thing number one is the bulletin and the bulletin is entitled stand up forklift underwrite hazards. This is from 2009. So well before the accident here and in that bulletin for underwrite hazards, it states in recommendation number six, train employees to operate forklifts safely as required by paragraph L of 29 CFR 10 19 one 78, including recognizing the hazards being the hazard we're talking about here of the workplace created by the use of the vehicle. So that's number one. None of this is surprising. It's all cited. The second is, and your counsel, your, your opposing counsel mentioned it in the Pharma Sol case, the secretary took the position and I'll read directly from Pharma Sol. It's at, I have a Westlaw site here. So star page 25, um, quote, the secretary's position is that Pharma Sol, this is under the heading of violation of 10, 19, 10, one 78 L the secretary's position is that Pharma Sol failed to inform employees about crushed by or underwrite hazards they faced while operating standup reach trucks. And this is from 2018, right before this happened here. And then finally in brief, the secretary does not dispute that quote, that training about underwrite hazard should be included in the comprehensive training program required by section 19, 10, one 78 L. And so if the hazard, which is the underwrite hazard is incorporated in the training is recommended in the bulletin for this exact problem. And the secretary's litigation position has been the exact thing that's being said here. It's hard for me to say that it's not covered. So that's my, that's my issue. Yes, Your Honor. Okay. So first taking thing one, the bulletin. So the bulletin from 2009, um, was some 10 years after the revision to the standard and the bulletin is information. It's, it's advice to employers. And it says, here's this hazard. Here's an underwrite hazard. Here's what it is. And it, by the way, has nothing to do with striking the rack. The whole point of the underwrite hazard is that it's the, the employee's body that strikes the rack, the forklift. If the forklift struck the rack, then the employee would be okay. Um, so the, the bulletin says, and at the beginning it says, this is not binding. This is not, does not impose any legal obligations, but you know, here OSHA enforces the standards and the general duty clause. So that's just a reminder to employees. So this, the bulletin says, here's our applicable, you know, here's a standard, the training standard. In addition, here are these recommendations, a whole bunch of things, the things that Your Honors are familiar with from reading the briefs, adjusting the shelf heights, using posts, et cetera. And the bulletin says, employers should look in their warehouses to see if they have an underwrite hazard. And if you do, they should take one of these actions. And you know, I'm sorry to interrupt. And I want you to finish the whole question. We're going to go through all of it. But my only issue is that when, what 1910.5F seems to tell employers, and whether this regulation should exist or not is a separate story, but it does, no one's disputed it, that if you comply with this, and to the extent you comply with this, whatever's covered by it to that extent is, you're not going to be deemed to be in violation of the requirements of the general duty. And so if you tell, if you, I understand it's a recommendation, but if you tell employers, this is our recommendation, it tells you to address this very thing through training. You do that very thing. And if you do that very thing, you're going to be liable under the general duty. It seems to be inconsistent that come here and tell us they violated the general duty for doing what you told them to do. Well, it's that last part that your honor just said that I disagree with. I don't think there is, there's certainly no overt statement. And I don't think it's a fair reading of the bulletin to say, we will not, but here are some things you could consider doing if you feel like it to address this hazard, but we're not going to hold you responsible if you. The bulletin doesn't say that, but the bulletin in conjunction with 1910.5 F seems to give that impression to a company. In other words, you you've created, you guys call it preemption, but you really have just sort of created a safe Harbor is really what it is. Right. I think that, and go with, this is sort of a segue to thing too, which is the pharmaceutical case. The pharmaceutical judge put it this way. You could, an employer could be for that matter. And this hazard, the underwrite hazard would remain. And the question under the general duty clause, which of course is designed and intended to cover situations that no standard addresses, um, is whether the question under the general home is it, it addresses it. You're just, you're just imposing a test that says, unless it eliminates the risk, um, then, then we can rely upon the general duty clause. And that, that, that seems to me that if you want to do that, you need, you need to promulgate a new standard and put it through notice and comment. And you, you can't use the general duty clause that way. Well, your honor, I guess I disagree that. I mean, I do disagree that the standard addresses the underwrite hazard. Um, it doesn't mention it. It doesn't. And the, so here's where I saw you, you told us what the commission decided in the pharmaceutical and you're, what you said is a hundred percent accurate, but that's not the question that I asked that I asked you, the secretary took the litigation position. And that seems to be very inconsistent in the position you're taking here. Yes. Okay. Well, I hadn't started to address thing two yet, but yes, thing two. So first of all, the pharmaceutical case was an ALJ decision did not go up to the commission. So in that case, the secretary issued two citations. One was a general duty clause citation for an underwrite similar to this case. And the second was a citation for a violation of the training standard for not training employees about the underwrite. Under 1910.178L. Correct. So, and the ALJ found two things. First of all, the physical setup in that warehouse was different. The ALJ found that there was, the secretary had not established that there was an underwrite hazard, the shelves were different heights and et cetera. And then the ALJ held that because of that, you know, that, that there would be no need that there was no way that the secretary could establish a, a, a training violation because the secretary had not shown that there was a hazard in the first place that needed to be trained about. So I understand your honors observation of the, the inconsistency, but I think that in that case, there was a training allegation that was tied to the existence of you know, or the alleged existence of an underwrite hazard. Now it is also true as, as Chewy has pointed out in their brief, possibly amicus also that the secretary's expert witness at trial testified something along the lines of, yes, it would be covered. And I think what that, I think, let me just add, yes, which this isn't from your brief of age 40, which the secretary does not dispute. And I think that's true because the training is about, is, is intended to be comprehensive safety. And, and, and the regulation requires that the training include training to avoid underwrites. Your, your own brief acknowledges that. Well, the regulation doesn't say that, but we, yes, we agree that that is a reasonable reading of the regulation, but I just, I do not think that. Okay. I'm sorry to interrupt. It's not just a reasonable reading. It's the reading that the secretary has actually given it in the bulletin, in its litigation position and here. Yes. We favor training. We think that the trait that underwrite hazard is a training to avoid underwrites. Yes. Very problem here. Yes. Because the regulation requires that training. I don't think that it is a, it is yes. And that's not in dispute, but I don't, I disagree that that the presence of that, that the fact that you can read this training provision to say employers with underwrite hazards should train on underwrite hazards. I mean that yes, the secretary takes that position, but you training is, is so insufficient to address this, to, to abate this hazard. Do you need to issue a new regulation? Well, you know, the, the secretary does or doesn't promulgate regulations for all kinds of reasons, your honor, but the fact remains that the general duty clause is intended to cover situations where there is no standard that applies. All right. I think that you need to go back to what you were starting to say. You said the standard does not address or cover underwrites. Now, in light of what you've just heard, what is your argument as to why it's not covered or addressed? Because the word is not in there. The concept is not in there. If you read the preamble. But you agreed that the training, that it requires training to prevent underwrites. If that's the situation that has, yes, but we don't, because training is so insufficient. Well, that's, I mean, yeah, I mean, yeah, but you're, so really what your argument is, is that unless it eliminates the risk of the hazard, we can always rely upon the general duty clause. I don't think, no, it doesn't have to eliminate the risk, but whether or not you train entirely covers the risk. And I'm trying to understand how that, how that makes any sense. If the training that is required by the regulation has to address underwrites and you're saying it doesn't entirely address it, doesn't that really mean that if there's still a risk that an underwrite will occur and it does occur, then we can rely upon the general duty clause? Well, there's always still the risk that the underwrite will occur. And that's because training is 100% insufficient to abate this hazard. You cannot, it is not possible to train Which makes my point. Unless it eliminates the risk of the hazard, we can rely upon the general duty clause. Well, your honor, I think, I mean, I certainly understand the argument, but I think that it is not a fair reading of this standard, which, you know, regardless of what the secretary said in a brief, and I stand by that. I do not think it is a fair reading of the standard to say this, this talks, this tells you so much about an underwrite to why the standard doesn't cover underwrites. The only thing I've heard so far is because the word is not there. Is there anything beyond that? Yes. The word is not in there and the entire standard is directed to the hazard, hazards associated with forklifts striking things. And as I explained, an underwrite hazard has to do with the forklift striking anything. There, it is certainly related to, it is, it involves a powered industrial truck and the operation thereof. Is there anything beside the word is not there and what is there is focused on striking the rack or part of the building? Is there anything else? That's your two arguments, why the standard does not cover underwrites. Well, and then my third argument, which the chief judge doesn't like, is that training is entirely insufficient to address the hazard. And so whether or not you're training. It's not a matter of liking it or not. It's a matter of, of how it impacts, whether the standard covers this situation. I understand that. Right. I, I, I think that with training or no training, or even with as much training as possible. Well, that's always true. No training eliminates anything. Okay. It's never going to eliminate any hazard. You'd have to have a barrier sometimes to keep somebody from falling or whatever. Well, the standard under the general duty clause is an abatement measure has to eliminate or materially reduce the hazard. It just so happens that in this case, there are abatement methods that, um, that do completely eliminate the hazard. Can I ask you a question? So judge hall has a series of questions of your opposing counsel regarding whether the forklift ever touched the racks in this case. Do you know what the state of the evidence is? Do you have a view of that? Yes. The, the forklift did not touch the rack. The operator did. The operator did. So I'm looking at picture, um, and there may be other pictures, but I, I, the one I'm looking at is, um, it's in our docket entry 17, because this was how you guys gave the record to us. And it's at pages eight 95 and eight 96. It's the picture after afterwards it's timestamped December 16th, 2010 at it looks like 1649. Um, and there, it does look like, first of all, it looks like it's diagonal as opposed to straight on. Um, in other words, it didn't go exactly backwards where only there, it looked like it sort of diagonal backwards. And it does look like at least part of, because it's diagonal, the, I, the, the mechanism I'm not going to misdescribe, but the, the, the, the front of the back compartment is touching the, it looks like it's touching the rack, the, uh, the, the, the lower most shelves. Is that a fair description? I don't have that picture in my brain. Um, but I can tell you that the pictures obviously were taken after the accident. There was no video and nobody witnessed this accident. Um, so maybe the, the, um, the forklift turned as a result of the accident and they couldn't say, but the underwrite itself is crushed. So you got to move the, you got to move the forklift maybe to get him off the fork. Who knows? It could be, I don't know, but I have the same picture. You really can't tell whether it's touching or not touching. It's hard to say. Right. But what I can tell you is that the underwrite itself is when the rack contacts the operator's body. Um, and you know, by even when the forklift is only moving a mile or two an hour, it weighs 10,000 pounds and, and it crushes the employee before they have a chance to react. So, um, you know, I, I, this was a 2020 accident. I'm just curious, is the secretary done any kind of amendments or standards to say, put up those posts in the back of the forklift so this can't happen? Cause not that I know of your honor, as I mentioned, OSHA does and doesn't promulgate standards for any number of reasons. Um, but you know, in conclusion, I just, I think that it is not given the circumstances of this case. I don't think that it is. I think that all of truly is sort of fair notice arguments and we shouldn't have had to do this are really not grounded in the fact that in the reality that their own safety director told them after the first accident to do these things, simple actions that they did in fact take moving the shelves only took a few hours. They knew about it. Um, the question is whether the regulation required that. Um, but, but, uh, I think we understand your argument, Mr. Troy. Thank you. We appreciate it very much. Um, Mr. Metzger, you've saved three minutes, three minutes. Thank you. Part of what the department of labor is emphasizing now is that quote, the word is not there in terms of underwrite, but that's not the standard. The standard is whether the subject of, or the risk of the hazard is covered by the regulation. And they, they, they admit that the regulation requires training to prevent this very hazard precisely. And, uh, counsel, I will tell you though, that if we didn't have some of the information we have here, in other words, if we didn't have the concession or admission, and we didn't have the bulletin and the litigation position, I I'm sympathetic to the argument that it's not covered because it doesn't mention it. But I think given the secretary's position, it's hard to say that, that this is the reasonable reading we've given it. This is the reading we in fact have given it, but, but I don't want you to give it for this particular case. I'm having trouble with that. That that's where I'm at. And picking up on that, your Honor, in terms of OSHA enforcing performance standards. And I know that there has been a discussion of distinction between the general duty clause and performance standards, but precisely to your point, your Honor, in terms of OSHA enforcing a performance standard, let's take the PPE standard. All the time, what they do is say that an employer is required to take certain steps, even if the particular issue is not addressed word by word in the standard. That's exactly what the position was by the department of labor in the CNW facility services case. It doesn't say drowning. It doesn't say a life jacket. What they did though, is say it is covered because they're required to take certain broad steps in terms of personal equipment. There's nothing in there that is inconsistent with our position in saying, indeed, the powered industrial truck standard here covers it. In fact, it covers it. Well, she has two points. It's not just the word is not there. It's also what is there is focused on striking the building or column. I'm not saying it's persuasive. I'm saying it's more than it's missing. It's that the focus of the regulation is on the striking part of the building or column, or it hitting another employee as it's traveling through the warehouse. This is what it's addressing specifically, and it's not addressing this. Now we have the whole separate training apart, but if you're just faced with the wording of the regulation, let's assume we ignore everything else. How does the wording of this regulation cover this? Two things. First, on your earlier point about the factual question, it does appear that in the transcript, including at page 258 of the transcript, there's discussion of hitting the rack. I know there's, because there's not a video, because we did not have a witness. Because it makes it easier if he hits a rack and then it's directly covered. We would agree, Your Honor, and the distinction of whether a piece of the powered industrial truck grazed it and then it's covered, or only his body hit the rack in the exact same action, that's not covered. I think that's reading the preemption issue far too narrowly. I know that the Department of Labor would like to read it that narrowly so that they can use the general duty clause in order to impose additional requirements, but there's no question that if there's an underwrite incident and his body hits it and the powered industrial truck hits it, all positions seem to be that indeed it's covered. If we just have this minor distinction of whether it's just his body hitting and then it's not covered, that does not appear to be consistent with 1910.5 or with OSHA's position that they've taken in enforcing performance standards or other general standards. Okay, thank you, Mr. Metzger. We have your case. We're going to move to the third case this morning.